IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN ANDREKOVICH and )
KIMBERLY ANDREKOVICH, )
                              )
        Plaintiffs, )
                              )
      v. )     2:12cv195
                              )     **Electronic Filing**
PENNPRIME LIABILITY TRUST, )
BRIAN GABRIEL, GRETCHEN LOVE, )
                              )
        Defendants. )

## OPINION

Plaintiff Brian Andrekovich ("plaintiff") initially commenced a § 1983 civil rights action

against the council members of the Borough of Punxsutawney who voted to terminate his

employment as a Borough police officer after an individual he arrested, Stephen Obbish, died

while in police custody. See Brian Andrekovich v. Lawrence Chenoga, et al., 2:11cv1364.[1]

Plaintiff sought redress for alleged deprivations of liberty and property under circumstances that

assertedly violated his rights to procedural due process. The defendants in that action challenged

plaintiff's amended complaint on a variety of grounds, including that (1) plaintiff was seeking

remedies that he was not entitled to in the form of back pay, reinstatement and overtime pay, (2)

plaintiff had sufficient notice of the grounds upon which his suspension and termination were

based, thereby eviscerating any entitlement to relief under Cleveland Bd. of Educ. v. Loudermill,

470 U.S. 532 (1985), (3) plaintiff's attempt to recover for any injury from his suspension was

time-barred, and (4) plaintiff's complaint did not set forth a § 1983 claim for injury to his

reputation because he could not establish (a) the elements or damages for such a claim or (b) that

---

[1] Those members of council where Lawrence Chenoga; Donna Lellock; Michael Porada; Robert
Reesman; William Spencer; Roger Steele; and Susan Glessner. Plaintiff also sued the Chief of
Police, Thomas Fedigan.

Chief Fedigan made the decision to pursue the criminal investigation. In an opinion issued on August 6, 2012, this court held that plaintiff had set forth valid claims for relief in accordance with (1) <u>Loudermill</u> and (2) a "stigma-plus" theory based on injury to plaintiff's liberty interest in his reputation. <u>See</u> Opinion of August 6, 2012 (Doc. No. 32) in <u>Brian Andrekovich v. Lawrence Chenoga, et al.</u>, 2:11cv1364.[2] Following the issuance of that opinion plaintiff was granted leave to amend and those defendants were directed to answer the complaint.

On February 2, 2012, plaintiffs commenced the instant civil rights action in the Court of Common Pleas of Allegheny County against defendants PennPrime Liability Trust, Brian Gabriel, and Gretchen Love ("defendants") seeking redress for the same injuries underlying the initial complaint against the Borough council members and Chief Fedigan. Defendants removed the action on February 16, 2012.

In the instant action plaintiff claims that defendants engaged in "joint action" with the Borough to violate his rights to due process in the same manner alleged in the initial complaint, which included terminating plaintiff without just cause and/or affording him the procedural safeguards to which he was entitled. Defendant PennPrime Liability Trust is a licensed insurance company within the state of Pennsylvania and issued a policy of insurance to the Borough. Defendants Gretchen Love and Brian Gabriel were hired pursuant to that policy as counsel for the Borough. Plaintiff generally asserts that Love and Gabriel caused the false charges to be filed against plaintiff by the Borough. After the Punxsutawney Civil Service Commission ruled in plaintiff's favor, Gabriel and PennPrime caused the Borough to refuse to reinstate plaintiff or award him back pay, and further caused the Borough to pursue frivolous

---

[2] The background and matters of record set forth in the opinion of August 6, 2012, are incorporated herein and it is assumed that the reader has familiarity therewith.

appeals to the Court of Common Pleas and the Commonwealth Court.[3]  All of these and other injurious acts were orchestrated for the improper purpose of bringing about a settlement in the wrongful death action that had been brought against the Borough and plaintiff by Obbish's estate. As a result of the filing of false and unfounded charges, public comments about plaintiff, and the pursuit of meritless appeals, plaintiff assertedly has suffered loss of income, injury to his reputation, impairment of his earning capacity and other forms of damages.

Presently before the court are defendants' motions to dismiss.  For the reasons set forth below, the motions will be granted as to all § 1983 claims and the remaining state law claims will be remanded to the Court of Common Pleas of Allegheny County.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery.  Id. at 544.  In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

---

[3]The Commission determined that the evidence relied upon by the Borough to effectuate plaintiff's suspension and termination did not exist and plaintiff had been accused of being dishonest for failing to admit to events that did not occur.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ...

[and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

Under the above standards, the amended complaint sets forth the following. Plaintiff was insured under an insurance policy issued by PennPrime to plaintiff's employer, the Borough. Id. at ¶ 8. Gabriel and Love were counsel to the Borough. Id. at ¶ 9.

On November 3, 2009, Gabriel and Love "caused false charges to be filed against Plaintiff by Borough's Council at the direction" of PennPrime. Id. at ¶ 10. On the basis of the charges filed, the Borough terminated plaintiff's employment as a police officer. Id. at ¶ 11. On July 15, 2010, plaintiff appealed his termination to the Commission. After an evidentiary hearing, the Commission exonerated plaintiff of all charges on the grounds that the policies, rules and procedures which plaintiff was alleged to have violated did not exist and plaintiff had not committed various acts with which he was charged; the Commission ordered plaintiff be reinstated with back-pay. Id. at ¶ 13. At the direction of defendants, the Borough refused to reinstate plaintiff or pay the back pay award and initiated a frivolous appeal of the Commission's decision to the Court of Common Pleas of Jefferson County. Id. at ¶¶ 14-15. The Court of Common Pleas affirmed the Commission's determination, finding that "unlike the Borough Council's Statement of Charges and termination letter, [the Commission's determination] was well supported by the evidence." Id. at 15. The court further found that the statement of charges and termination letter issued by Council at the instigation of defendants misrepresented

5

the evidence.  Id. at ¶ 16.  After the decision by Court of Common Pleas affirming the appeal, the Borough at the instigation and direction of Gabriel refused to reinstate plaintiff or pay the back pay award and appealed to the Commonwealth Court of Pennsylvania; the Commonwealth Court affirmed the decision(s) below.  Id. at ¶ 17-18.

On March 15, 2010, defendant Gabriel made a public statement to news media suggesting and intending to suggest plaintiff was guilty of misconduct.  Id. at ¶ 20.  There was no evidence to support Gabriel's statement.  Id.  The dissemination, stigma of wrongful termination, and successive groundless appeals subjected plaintiff and his family to public opprobrium and irreparable harm to his professional reputation.  Id. at ¶ 21.  As a result of these "unprivileged actions," plaintiff has suffered loss of income, injury to his professional reputation, mental anguish, pain and suffering, and an impairment of earning capacity, incurred attorneys fees and costs, and lost secondary employment.  Id. at ¶¶ 23-24.

Plaintiff avers that the "joint action" of defendants with the Borough was committed under color of state law, done to deprive plaintiff of his Fourteenth Amendment rights to liberty and property without due process of the law and carried out in a manner that subjects defendants to liability under § 1983.  Id. at ¶ 26- 27.  Defendants further intended to and did interfere with plaintiff's contractual relationship with the Borough and prospective contractual relationship with other governmental agencies.  Id. at ¶ 29.

Specifically, PennPrime insured plaintiff in conjunction with the claim brought by Obbish's estate.  It breached its fiduciary duty to plaintiff by subjecting him to false and defamatory charges and causing him to be terminated and deprived of future secondary employment, all for the purpose of advancing its own interests and those of its other insureds. Id. at ¶¶ 31-34.  PennPrime and Gabriel provided a defense to plaintiff in the wrongful death case against the Borough and plaintiff and then engineered the settlement of the wrongful death case

to require the Borough's appeal of the Commission's decision after publicly representing that the Borough would not enter into such an agreement; they then instituted the appeals without probable cause and primarily for the purpose of securing the settlement of the wrongful death case, and not because of any legitimate belief that the Commission's determination was erroneous or reversible. Id. at ¶¶ 38-41. These defendants utilized the appeals process against plaintiff for the purpose of effectuating the settlement of the wrongful death case and not to legitimately challenge the Commission's determination. Id. at ¶ 44. Finally, as a result of defendant's conduct, plaintiff Kimberly Andrekovich suffered emotional distress, loss of society, and the services of her husband, plaintiff Brian Andrekovich. Id. at ¶ 46.

Gabriel and Love move for dismissal on a variety of grounds. They contend plaintiff's reinstatement and back pay award constitute a full remedy for any perceived injury from the termination and the matters about which plaintiff complains cannot rise to the level of a constitutional violation under these circumstances; at all times they acted only in a profession capacity as counsel to the Borough and as a result plaintiff cannot establish that they were acting under color of state law; any statement plaintiff attributes to Gabriel was made in a judicial proceeding and was therefore privileged and plaintiff has failed to allege an adequate injury to support a "stigma-plus claim" in any event; plaintiff's claim against Love is time-barred; insufficient facts have been alleged to support a tortious interference with contract claim and/or an abuse of process claim; and the loss of consortium claim fails because all the underlying claims are deficient.

PennPrime contends that it could not have engaged in joint action with the Borough and therefore it cannot be found to have acted under color of state law. It cannot be held vicariously liable for the acts of Gabriel and Love because they acted as independent contractors in representing the Borough. No facts have been alleged to support a finding that PennPrime acted

7

in an intentional and improper manner or in self-interest and therefore the intentional interference and bad faith insurance practices claims fail. Finally, PennPrime maintains that the Borough made all substantive decisions about whether to file charges or seek appellate review and therefore any other state law claims are without merit.

Plaintiff contends that the course of conduct alleged and the attendant injuries and harms arising therefrom sufficiently state claims for denial of due process pursuant to <u>Loudermill</u> and the "stigma-plus" theory of liability. Defendants filed false charges and publicized them. They caused the Borough to terminate plaintiff without providing meaningful notice and an opportunity to be heard. They further misrepresented the evidence in public communications. All of these actions were done in a manner that brought stigma to plaintiff's reputation and produced injuries and damages that are recoverable notwithstanding the Commission's award of reinstatement and back pay.

Plaintiff maintains that defendants can be found to have acted under color of state law based on joint action with the Borough. Gabriel, Love and PennPrime acted jointly with the Borough in initiating false charges to terminate plaintiff and pursuing frivolous appeals from the Commission's determination. These actions were taken outside the confines of a judicial proceeding for the ulterior purpose of securing a settlement in Obbish's wrongful death suit. Such conduct by a state official is in violation of the Constitution and private citizens who act in concert with state officials in pursuing such goals also act under color of state law.

Plaintiff further maintains that Gabriel and Love's exercise of professional judgment did not remove them from the purview of state action under § 1983 as recently re-affirmed by the Supreme Court in <u>Filarsky v. Delia</u>, 132 S. Ct. 1657 (2012). Furthermore, defendants' role was akin to those who perform administrative or investigatory work in conjunction with a judicial

proceeding, thereby removing them from the protections of immunity that attach to actions taken in such proceedings.

Plaintiff similarly argues that PennPrime "caused" and "directed" the filing of the false charges and meritless appeals. It did so as a joint participant with the Borough and for the improper and self-serving purpose of advancing its financial interest in settling separate litigation. PennPrime had its agents undertake this course of action with knowledge that it was without foundation and done for such an improper purpose. Thus, PennPrime can be found to have acted under color of state law, tortiously interfered with contractual relations, engaged in bad faith insurance practices, and wrongfully used and abused civil process.

Plaintiff's claim against Love purportedly was tolled because plaintiff was unaware of the nature of defendants' conduct and the harm at the time of his suspension and was unaware that he was going to be singled out for adverse treatment at that point in time. Gabriel was not an employee of the Borough or PennPrime and his defamatory statements can support a claim for tortious interference with plaintiff's contractual relationship with the Borough. Plaintiff also maintains that the defendants' course of conduct satisfies the elements for wrongful use of civil proceedings and abuse of process in that the charges were pursued and the appeals taken in order to advance an objective that was beyond the purpose of the undertaken process – that being a financial gain in a separate civil proceeding.

In general, § 1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right. [4] <u>Groman v. Township of Manalapan</u>, 47 F.3d 628,

---

[4] Section 1983 creates liability against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

633 (3d Cir. 1995). A cause of action under § 1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution and laws of the United States (2) that was committed by a person acting under color of state law. <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996); <u>Kelly v. Borough of Sayreville</u>, 107 F.3d 1073, 1077 (3d Cir. 1997); <u>Berg v. Cty. of Allegheny</u>, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." ) (citing <u>Groman</u>, 47 F.3d at 633).

Plaintiff sufficiently has pled that his constitutional rights were violated. It already has been determined in <u>Brian Andrekovich v. Lawrence Chenoga, et al.</u>, 2:11cv1364, that plaintiff has viable claims for violation of due process under the <u>Loudermill</u> and the stigma-plus theories of liability. <u>See</u> Opinion of August 6, 2012 (Doc. No. 32) in <u>Brian Andrekovich v. Lawrence Chenoga, et al.</u>, 2:11cv1364. It also has been determined that plaintiff has alleged compensable damages that are outside the relief of reinstatement and back pay obtained in the state process and plaintiff may be able to establish that his due process claims were commenced in a timely fashion. <u>Id.</u> The background facts and the legal principles and reasoning supporting those determinations apply with equal force to defendants' arguments in the instant action. Accordingly, those challenges to plaintiffs' amended complaint are deemed to be unavailing for the same reasons set forth in the Opinion of August 6, 2012, and plaintiff has set forth a sufficient factual basis to support the first element of his § 1983 due process claims.

Plaintiff has failed to plead sufficient facts to make a plausible showing that defendants acted under color of state law. To be sure, the Supreme Court has recognized that private citizens can engage in conduct that will satisfy the state action element for § 1983 liability. In this regard the Court has observed that the criteria for determining the presence of state action lacks rigid simplicity. <u>Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S.

288, 296 (2001). Over the years the Court has established a number of approaches to answer the general question of whether there is a sufficiently "close nexus between the State and the challenged action [so] that seemingly private behavior may be fairly treated as that of the State itself." Id. (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 349 (1974)). It has identified a host of factors that can "bear on the fairness of such an attribution," such as when (1) the challenged activity results from the state's exercise of coercive power, (2) the state provides significant encouragement, either overt or covert, or (3) a private party becomes a willful participant in joint activity. Id. at 296 (collecting cases in support).

In Crissman v. Dover Downs Entertainment Inc., the Third Circuit followed Brentwood's approach to evaluating allegations of state action by private parties. Crissman, 289 F.3d 231, 239 (3d Cir. 2002). Regardless of whether the approach is treated as "tests" or "facts," "Brentwood directs courts to focus on the fact-intensive nature of the state action inquiry, mindful of its central purpose: to assure that constitutional standards are invoked 'when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.'"[5] Id. (citing Brentwood, 531 U.S. at 295 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (emphasis in original)). In other words, the basic question is whether the challenged act can be "fairly attributed to the state." Crissman, 289 F.3d at 231 (citing American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)).

Brentwood highlighted Lugar as an example of when private party conduct may be fairly

---

[5] The Supreme Court pointed out in Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), that it has never been clear "[w]hether these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in [each] situation." Id. at 939; see also Groman, 47 F.3d at 639 n. 16. Brentwood appears to embrace the second understanding. Crissman, 289 F.3d at 239 n. 12.

attributed to the state under the theory of joint activity.  <u>Brentwood</u>, 531 U.S. at 295.  <u>Lugar</u> set forth two central principles to guide the fact-intensive inquiry in this area: "[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible" and "[s]econd, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."  <u>Lugar</u>, 457 U.S. at 937.

Conspiratorial conduct can satisfy the two principles highlighted in <u>Lugar</u>.  <u>Lugar</u>, 457 U.S. at 931.  In examining its prior precedent in this area the Court observed:

> As is clear from the discussion in Part II, we have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment. The rule in these cases is the same as that articulated in <u>Adickes v. S. H. Kress & Co.</u>, *supra*, 398 U.S., at 152, 90 S. Ct., at 1605–1606, in the context of an equal protection deprivation:
>
>> "'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,'" quoting <u>United States v. Price</u>, 383 U.S., at 794, 86 S. Ct., at 1157.

<u>Id.</u> at 941.  In <u>Adickes</u>, the Court recognized that a "private party's joint participation with a state official in a conspiracy to discriminate would constitute both 'state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights' and action 'under color' of law for purposes of [ § 1983]."  <u>Id.</u> (quoting <u>Adickes</u>, 398 U.S. at 152); <u>accord</u> <u>Dennis v. Sparks</u>, 449 U.S. 24, 27 (1980) ("[a]lthough not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." ).  In this setting the

12

first principle may be satisfied by the state official joining with the party to carry out a state procedure for a constitutionally prohibited reason. <u>Adikes</u>, 398 U.S. 152 ("Although this is a lawsuit against a private party, not the State or one of its officials, our cases make clear that petitioner will have made out a violation of her Fourteenth Amendment rights and will be entitled to relief under § 1983 if she can prove that a Kress employee, in the course of employment, and a Hattiesburg policeman somehow reached an understanding to deny Miss Adickes service in The Kress store, or to cause her subsequent arrest because she was a white person in the company of Negroes."); <u>accord</u> <u>Dennis</u>, 449 U.S. at 31-32 (allegations that an official act by a state court judge was the product of a corruption conspiracy involving bribery of the judge were sufficient to assert action under color of state law on the part of the private parties); <u>Abbott v. Latshaw</u>, 164 F.3d 141, 198 (3d Cir. 1998) (allegations that ex-wife formed agreement with state constable to repossess vehicle without affording ex-husband advance notice and an opportunity to be heard prior to the seizure and effectuated that agreement with aid of constable and local police officer stated § 1983 claim against ex-wife).

Plaintiff has (1) alleged that defendants formed an agreement with the Borough that potentially falls within the ambit of the above framework and (2) identified a motive for them to do so. Thus, plaintiff has set forth averments that potentially could support an attribution of state action to defendants.

It is well settled, however, that a plaintiff cannot establish the existence of actionable joint or conspiratorial conduct through actions undertaken by counsel in an attorney-client relationship. <u>Hefferan v. Hunter</u>, 189 F.3d 405, 413 (3d Cir. 1999). Under the "intracorporate conspiracy doctrine" an entity cannot conspire with one who acts as its agent. <u>Id.</u> Thus, as long as the attorney is acting in his or her official capacity and within the scope of representing the client, the attorney enjoys immunity from suit under the Civil Rights Act. <u>Id.</u>; <u>accord</u> <u>N'Jai v.</u>

Floyd, 386 Fed. Appx. 141, 144 (3d Cir. 2010) (school districts' attorneys who acted in representative capacity in the plaintiff's civil rights and discrimination cases could not be found "liable under 42 U.S.C. §§ 1983, 1985, or 1986."). Liability may attach in such settings only where the attorney acts solely in a personal capacity and not within the scope of the attorney-client agency. Hefferan, 189 F.3d at 412 ("Along these lines, courts that have followed the doctrine allow an exception when the employees have acted for their sole personal benefit and thus outside the course and scope of their employment.") (citing in support Fraidin v. Weitzman, 611 A.2d 1046, 1077-80 (Md. App. 1992) (no conspiracy when attorneys act within scope of employment unless they act for their "sole personal benefit")). The courts consistently have followed these principles in this jurisdiction. See e.g. Singleton v. Pittsburgh Bd. of Educ., 2012 WL 4063174, * 6-8 & n. 8 (W.D. Pa. August 24, 2012) (Lenihan, Magistrate Judge) (allegations that indicate among other things that an attorney was acting for the benefit of his or her clients and not solely for his or her personal benefit cannot provide the relationship necessary to confer state actor status on the attorney under § 1983) (collecting cases).

Moreover, immunity from § 1983 conspiratorial liability remains even where an attorney acts for "mixed motives" so long as at least one basis for the challenged conduct is within the scope of the agency. Hefferan, 189 F.3d at 413. In other words, the mere fact that the challenged conduct may benefit the attorney does not make it actionable provided it is undertaken within the scope of representation. Id. And this is so even where the conduct violates the canons of ethics. Id. ("The challenged activity may violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge" under the Civil Rights Act.). Similarly, "the fact that the attorney appellees may have acted in bad faith or with the illegitimate purpose of abusing process in mind, does not,

14

in itself, bring their actions outside the scope of the attorney-client relationship." <u>General Refractories Co. v. Fireman's Fund Ins. Co.</u>, 337 F.3d 297, 314 (3d Cir. 2003).

Plaintiff has failed to allege any factual basis to support a plausible showing that Gabriel and/or Love acted solely for their own personal benefit. It cannot be disputed that only the Borough could bring charges against plaintiff and seek to terminate him. It likewise cannot be disputed that only the Borough possessed the right to seek review of the Commission's determination. It had exclusive control over the decision to proceed with the charges and/or each level of appeal. The facts alleged indicate only that the Borough ultimately exercised its rights over these client decisions after receiving the advice of counsel. There is no basis in them to find or infer that the Borough's counsel acted outside their representative capacity and solely for their own personal benefit. Consequently, plaintiff has failed to allege enough factual matter to make a plausible claim that Gabriel and Love acted under color of state law and plaintiff's § 1983 claim against these defendants must therefore be dismissed.

Against this backdrop, plaintiff's reliance on <u>Filarsky</u> is misplaced. There, a firefighter for the City of Rialto, California , Delia, had been off work after becoming ill on the job. 132 S. Ct. at 1660. The city became suspicious of Delia's extended absence and hired a private investigation firm to conduct surveillance on him. After Delia was spotted buying building materials, the city formed the belief that Delia was missing work to perform construction on his home and it opened a formal internal affairs investigation into the matter. It ordered Delia to appear for an interview. The city hired Filarsky, a private attorney with substantial experience in labor and employment law, to interview Delia. At the interview Delia admitted buying the materials but denied that he did any work on his house. Filarsky proposed to the chief of the fire department that Delia be requested to produce the materials. The chief agreed to the proposed approach. After a break Filarsky asked Delia to permit a fire department official to enter his

home and view the materials.  Delia refused.  Filarsky then requested Delia to bring the materials out of his house and place them on the lawn for inspection.  Delia and his attorney threatened to sue the city officials who were present and Filarsky.  Filarsky then prepared an order directing Delia to bring the materials out for inspection.   The chief of the fire department signed the order.  Firefighters then followed Delia to his home where Delia produced the building materials on his front lawn for inspection.  Id. at 1660-61.

Delia did file suit under § 1983.  The district court granted summary judgment to all the individual defendants, concluding that they were protected by qualified immunity.  The court of appeals affirmed as to all defendants except Filarsky.  It held that the order had violated the Fourth Amendment, but the right was not so clearly established such that the defendants would have known that their actions were unlawful.  Id. at 1661.  The court reversed as to Filarsky, however, ruling that he was not entitled to qualified immunity "because he was a private individual retained by the City to participate in internal affairs investigations."  Id. at 1662 (internal quotation marks omitted).

After surveying the history of immunity in conjunction with the development of government in the United States prior to the passage of the Civil Rights Act and the traditional approach and established principles governing the availability of immunity, the Court held that "immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis."  Id. at 1665.  It further observed that under the traditional approach the fact that Filarsky was a private individual hired to perform government work on a part-time basis did not preclude him from invoking the protections that have been traditionally afforded to his full-time government-worker counter-parts and denying those protections to such individuals would run counter to all of the concerns the doctrine is designed to address.  Id. at 1665-66.  The Court concluded:

> A straightforward application of the rule set out above is sufficient to resolve this case. Though not a public employee, Filarsky was retained by the City to assist in conducting an official investigation into potential wrongdoing. There is no dispute that government employees performing such work are entitled to seek the protection of qualified immunity. The Court of Appeals rejected Filarsky's claim to the protection accorded Wells, Bekker, and Peel solely because he was not a permanent, full-time employee of the City. The common law, however, did not draw such distinctions, and we see no justification for doing so under § 1983.

Id. at 1667-68.

Filarsky stands for the rather straightforward proposition that a private citizen hired to do government work on an event or part-time basis cannot be denied the protections of qualified immunity solely on the premise that the citizen was not a fulltime government employee. In other words, private individuals who are hired to perform government work may claim government employee status and seek to avail themselves of the concomitant protections which government employees enjoy. In reaching these determinations, the Court did not address or alter the expansive body of law governing when private citizens can engage in conduct that may be said to be fairly attributable to the state and thus qualify as state action.

It follows that Filarsky does not provide any support for the proposition that Gabriel or Love were state actors or were otherwise acting under color of state law. Neither Gabriel or Love were hired or commissioned by the Borough to do specific work for Borough. PennPrime privately retained them in their professional capacity to represent the Borough and plaintiff in legal matters before various state bodies and tribunals. Filarsky neither considered such matters nor changed the law which governs whether lawyers acting in their professional capacity can be liable under § 1983. Consequently, plaintiff's attempt to bypass the import of Hefferan and General Refractories on this score is unavailing.

Plaintiff's attempt to plead that PennPrime was acting under color of state law falls short of the mark for similar reasons. Plaintiff essentially alleges that PennPrime caused Gabriel and

Love to cause the Borough to pursue baseless and false charges against plaintiff premised on the death of Obbish and to pursue meritless appeals from the Commission's determination in order to enhance PennPrime's (and the Borough's) financial interest through an engineered settlement of the Obbish estate's wrongful death action. Once again, the relationship of the parties and the context undergirding plaintiff's claim precludes its advancement.

An insurer's relationship with counsel retained to represent an insured is well defined and regulated under Pennsylvania law. "When an insurer retains an attorney to represent an insured, pursuant to the insurer's duty to defend, that attorney's client is the insured, not the insurer." Ingersoll-Rand Equipment Corp. v. Transportation ins. Co., 963 F. Supp. 452 (M.D. Pa. 1997). In this setting Pennsylvania law recognizes the importance of maintaining the attorney's exercise of exclusive control over the manner of the representation for which the attorney has been employed. Id. ("A lawyer in private practice, retained to handle a particular matter, acts on behalf of his or her client in the capacity of an independent contractor, not an employee.") (citing McCarthy v. Recordex Serv., Inc., 80 F.3d 842, 853 (3d Cir.), cert. denied, 519 U.S. 825 (1996)). This independent control and the regulations which are designed to maintain it preclude the imposition of vicarious liability premised on the legal relationship of the parties. See id. ("Count V alleges, without elaboration, that Transportation Insurance breached its duty to use due care in defending Ingersoll–Rand. Such a conclusory allegation is insufficient to state a claim for breach of the contractual duty to defend."); Scottsdale Ins. Co. v. City of Hazleton, 2009 WL 1507161, * (M.D. Pa. May 28, 2009) (carrier entitled to summary judgment where evidence failed to demonstrate that attorney was engaged in dual representation of both insured and insurer); cf. I & S Associates Trust v. LaSalle National Bank, 2001 WL 1143319, * 4 (E.D. Pa Sept. 27, 2001) ("Pennsylvania recognizes that an attorney maintains exclusive control over the

manner in which he or she performs legal work" and as a result the negligence of counsel cannot be imputed to his or her client.).

The courts' extension of the "intracorporate conspiracy doctrine" to the attorney client relationship has been predicated in part on the regulatory framework that governs attorneys' conduct in the representation of their clients. Heffernan, 189 F.3d at 413; General Refactories, 337 F.3d at 313-14. That regulatory framework continues to govern the attorney's conduct when he or she is hired to fulfill a duty to defend. Pennsylvania law closely regulates the attorney's obligations and ethical duties notwithstanding the source of payment. It likewise monitors the conduct of carriers in ways far beyond that of corporations in general. See e.g. 42 Pa. C. S. § 8371; 40 P. S. § 1 *et seq*. This regulatory framework provides more than ample support for a co-extensive application of the "intracorporate conspiracy doctrine" to the carrier where § 1983 liability is predicated on nothing more than an attorney's conduct performed pursuant to the attorney client relationship.

Given this backdrop, plaintiff has failed to allege facts which jettison the realm of counsels' representation beyond that of representing their client. Plaintiff contends only that PennPrime and Gabriel "instigated" and "directed" the Borough to file false charges, terminate plaintiff's employment and pursue meritless appeals. As noted above, plaintiff's allegations fail to demonstrate that Gabriel and/or Love acted outside the scope of their representative capacity. In the same vein plaintiff's allegations fail to raise any basis from which it legally can be found that counsel did not act to implement their client's decisions about pursuing relief which the client unquestionably was entitled to pursue notwithstanding any advice of counsel. In other words, plaintiff's attempt to advance the assertion that Gabriel and Love were acting as agents of PennPrime when carrying out their duty to provide the Borough with independent legal representation reflects nothing more than a footless and unsupported allegation that falls short of

19

showing a claim for relief that is plausible on its face. <u>Compare</u> <u>Santiago v. Warminster</u> <u>Township</u>, 629 F.3d 121, 130 (3d Cir. 2010) (assessing whether a claim has been stated that is plausible on its face requires the court to identify and exclude "allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'") (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).

Moreover, the allegation that PennPrime stood to benefit from Gabriel and Love's obligation to implement the Borough's decisions regarding its employment relationship with plaintiff does not provide a sufficient factual foundation to show that Gabriel and Love were acting as independent agents for PennPrime. That Gabriel and/or Love may have had mixed motives for engaging in the alleged litigation tactics did not remove them from the attorney client relationship that governed their obligations and actions in representing the Borough. <u>See</u> <u>General Refactories</u>, 337 F.3d at 313 ("the mere fact that attorneys have 'mixed motives,' such as 'enhancing' their reputation by aggressive representation, does not remove their conduct from the scope of the agency." (quoting <u>Heffernan</u>, 189 F.3d at 413). That they may have acted unethically or in bad faith likewise did not remove their actions from the scope of that attorney client relationship. <u>Id.</u> at 314. Against this backdrop, merely alleging that their conduct may have also served to benefit the financial interests of the carrier that hired them to represent the Borough by advancing the resolution of some other related litigation does not, in our view, supply a sufficient factual predicate to pierce the protections and safeguards arising from the attorney client relationship and set forth a plausible basis to show that Gabriel and/or Love exceeded their representative roles and acted in a conspiratorial capacity as agents of PennPrime. Something more is needed. That something is lacking here.

PennPrime's obligations to plaintiff as an insured also are well regulated under Pennsylvania law. Plaintiff has ample protections under state law to protect against any alleged

injury from a breach of PennPrime's duties to him as an insured. He has sought recourse for just such an injury through the concomitant state law claims contained in the complaint. Because plaintiff's § 1983 claims will be dismissed, the court will decline to exercise jurisdiction over those state law claims pursuant to 28 U.S.C. § 1367(c) and remand them to the Court of Common Pleas of Allegheny County. See Stehney v. Perry, 101 F.3d 925, 939 (3d Cir.1996) (district court properly may decline jurisdiction over pendant state law claims where federal claims have dropped from the case prior to trial, the parties will not be prejudiced by the dismissal of the state law claims, and the interests of judicial economy will be served); Queen City Pizza, Inc. v. Dominos' pizza, Inc., 124 F.3d 430, 444 (3d Cir. 1997) (district court retains discretion to dismiss state law claims where all federal claims have been dismissed).

For the reasons set forth above, plaintiffs' § 1983 claims will be dismissed and their pendant state law claims will be remanded to the Court of Common Pleas of Allegheny County. An appropriate order will follow.

Date: March 5, 2013

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Susan E. Mahood, Esquire
       Thomas V. Gebler, Jr., Esquire
       James R. Schadel, Esquire
       Scott R. Eberle, Esquire

       (*Via CM/ECF Electronic Mail*)